** Part I of Part II ** LIABILITY OF BOARD OF REGENTS Where an institution under the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges purports to incur liabilities payable from educational and general funds in excess of funds available, the Board of Regents has the legal responsibility to continue to operate such institution where the current appropriated moneys subject to fiscal year limitations are in excess of liabilities payable therefrom after excluding claims from previous fiscal years and where any non-fiscal appropriated funds or revolving fund moneys are in excess of valid liabilities payable therefrom after excluding claims which are invalid by reason of the failure to comply with the requirements of prior approval and encumbrance, or otherwise. Where such an institution incurs liabilities payable from auxiliary enterprise funds, in excess of cash on hand, the Board of Regents has the legal responsibility to continue to incur obligations as necessary to provide food and housing for students and maintain its other auxiliary enterprises necessary to make the institution effective as an educational institution. However, the Board of Regents and administration must carry on operation in a reasonable and prudent manner. The Board of Regents may not approve claims incurred in previous fiscal years payable out of current appropriated funds subject to fiscal year limitations. The Board may approve claims from previous fiscal years payable out of appropriated funds not subject to fiscal year limitations or from the institution's revolving fund, otherwise valid, so long as the requirement is met of obtaining prior approval and encumbrance by the Director of State Finance and other applicable laws. Claims incurred in previous fiscal years payable from auxiliary enterprise funds are not subject to fiscal year limitations and they may be paid from current funds so long as the funds are expended for the same purpose as collected. A revolving fund differs from a special agency account in that moneys from a revolving fund may be expended only upon warrants issued by the State Auditor and such expenditures are subject to prior approval and encumbrance by the Director of State Finance. Special agency accounts are not subject to such procedure since the institution directly draws vouchers on the State Treasury. There is no statutory debt limitation provision applicable to special agency accounts as is true of revolving fund accounts. However, obligations must be incurred in a reasonable manner. It is a general rule that in the absence of malice, oppression in office, or willful misconduct, public officers cannot ordinarily be held liable for mistaken exercise of discretion or error in judgment in the performance of official duties. However, it is appropriate to consult private counsel for advice on any particular factual situation involving a question of possible personal liability. The Attorney General has considered your request for an opinion on the following questions: "QUESTION 1: What is the legal responsibility of the Board of Regents in the event that one or more of the institutions under its jurisdiction incurs liabilities payable from education and general funds in excess of funds available? "QUESTION 2: What is the legal responsibility of the Board of Regents in the event that one or more of the institutions under its jurisdiction incurs liabilities payable from auxiliary enterprise funds in excess of funds available? "QUESTION 3: Can the Board approve claims that were incurred in previous fiscal years in education and general funds although we are now in a new fiscal year? "QUESTION 4: Can the Board approve claims that were incurred in previous fiscal years in auxiliary enterprise funds although we are now in a new fiscal year? "QUESTION 5: Can the Board legally continue to operate such an institution during this current fiscal year? "QUESTION 6: Can the Board authorize the institution to use funds collected from room and board, cafeteria, and student union to handle obligations incurred in a prior fiscal year as auxiliary enterprise debts? "QUESTION 7: Are depository accounts operated as revolving funds; and, if so, do they take on the same legal restrictions as revolving funds do? "QUESTION 8: Can the Board legally continue to operate an institution under its jurisdiction when the institution has incurred liabilities in the education and general fund areas in excess of monies available? "QUESTION 9: Can the Board legally continue to operate an institution under its jurisdiction when that institution has incurred liabilities in the auxiliary enterprise fund area in excess of monies available? "QUESTION 10: What personal liabilities would the Board incur if it continues to operate such an institution that has incurred liabilities in excess of revenues in both the education and general area and the auxiliary enterprise area?" Before proceeding with an analysis of your questions, it is necessary ;o set out certain pertinent constitutional and statutory provisions. the Board of Regents for Oklahoma Agricultural and Mechanical colleges, hereinafter referred to as the Board of Regents, is created pursuant to Article VI, Section 31(a) of the Oklahoma Constitution, which reads in part as follows: "There is hereby created a Board of Regents for the Oklahoma Agricultural and Mechanical College and all agricultural and mechanical schools and colleges maintained in whole or in part by the state. . ." The powers and duties of the Board of Regents are provided by 70 O.S. 3412 [70-3412] (1971) which reads in part as follows: "The Board of Regents for Oklahoma Agricultural and Mechanical Colleges shall have the supervision, management and control of Oklahoma State University of Agricultural and Applied Science, Panhandle Agricultural and Mechanical College, Langston University, Cameron State Agricultural College, Connors State Agriculture College, Eastern Oklahoma Agricultural and Mechanical College, Murray State Agricultural College, and Northeastern Oklahoma Agricultural and Mechanical College; and shall have the following additional powers and duties: "(a) Adopt such rules and regulations as it deems necessary to govern each of the institutions under its jurisdiction. "(b) Employ and fix the compensation and duties of such personnel as it deems necessary, including architects, attorneys, engineers, and other professional and technical persons deemed necessary by the Board, for its operation and for the operation of the institutions under its jurisdiction. . . "(c) Enter into contracts, purchase supplies, materials and equipment, and incur such other expenses as may be necessary to make any of its powers effective. "(d) Authorize officials at the several institutions under its jurisdiction to act in its behalf in the making of contracts, or in carrying out the powers conferred upon it. "(e) Receive and make disposition of moneys, grants and property from Federal Agencies, and administer the same in accordance with Federal requirements. "(f) Accept gifts of real and personal property, money and other things, and use or dispose of the same in accordance with the directions of the donors or grantors thereof. "(g) Direct the disposition of all moneys appropriated by the Legislature or by the Congress or derived from the sale of bonds or received from any other source by institutions under its jurisdiction. "(h) Acquire and take title to real and personal property in its name, on behalf of any of the institutions under its jurisdiction, and convey, exchange or dispose of, or otherwise manage or control, such property in the interest of such institutions, including the granting of leases, permits, easements and licenses over or upon any such real property. . . "(i) Have supervision and charge of the construction of all buildings at the institutions under its jurisdiction. "(j) Determine the need-for and cause to be constructed, dormitories and other buildings, on a self-liquidating basis, at any institution under its jurisdiction. "(k) Establish and maintain plans for tenure and retirement of employees of the Board and of the institutions under its jurisdiction, and for payment of deferred compensation of such employees; and provide hospital and medical benefits, accident, health and life insurance, and annuity contracts, for such employees and their dependents. . . "(1) The said Board shall cause a complete inventory to be made of all properties belonging to each of the said agricultural colleges or universities within the State of Oklahoma before the last Monday in December, next preceding each biennial session of the State Legislature, and accompanying said inventories shall be a financial statement showing in detail the condition of all funds appropriated for the use of said agricultural colleges and experimental stations, also the money expended and the purposes for which the same were expended and the condition of the institution; and, the results of experiments carried on, together with their recommendations concerning remedial legislation or regulations for the betterment of said institution. A copy of said inventories and reports shall be filed, one with the Governor, one with the Secretary of State and sufficient copies for the members of the Legislature. "(m) The said board shall audit all accounts against the funds appropriated for the use and maintenance of the Oklahoma State University of Agriculture and Applied Science and the other State agricultural colleges, including experimental stations, and the State Auditor shall issue his warrant upon the State Treasurer for the amount of all accounts, including salaries and expenses. "(n) Provide penalties and forfeitures by way of damages and otherwise for the violation of rules and regulations of the Board, which may be sued for and collected in the name of the Board before any court having jurisdiction of such actions. "(o) The Legislature further recognizes and confirms, that the Oklahoma State University of Agriculture and Applied Science is an institution corporate under the constitution and statutes of Oklahoma with full power and authority, acting through its constitutional Board of Regents, to do all things necessary or convenient to accomplish the corporate objects of said institution, and said institution, acting through its said constitutional Board of Regents, is hereby recognized to be such public corporation and to have such powers. "Without limiting the generality of the foregoing, the powers of said board of regents to control and use moneys accruing to the institutions under their jurisdiction and control, from non-tax sources, including institutional earnings, and proceeds of sales of surplus properties heretofore authorized to be sold, and revenues derived by way of bonuses and rentals from oil and gas leases, for any lawful institutional purpose, is hereby specifically confirmed. "The enumeration herein of certain powers and immunities of the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges shall not be construed as in derogation or as a limitation of other powers and immunities properly belonging to said Board by virtue of any provisions of the Constitution of Oklahoma or of any provision of law. Said Board, is hereby, expressly granted every power necessary or convenient to make institutions under its jurisdiction effective for the purposes for which they were created and are maintained and operated. "Nothing in this section shall be construed as in derogation of the constitutional powers and responsibilities of said Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, acting as the Board of Regents for Cameron State Agricultural College, Connors State Agricultural College, Eastern Oklahoma Agricultural and Mechanical College, Murray State Agricultural College, Northeastern Oklahoma Agricultural and Mechanical College, Panhandle Agricultural and Mechanical College, and Langston University." With respect to legislative appropriations, Article XIIIA of the Oklahoma Constitution establishes the Oklahoma State Regents for Higher Education, hereinafter referred to as State Regents, as the coordinating board of control for all state institutions supported wholly or in part by direct legislative appropriation. Article XIIIA, Section 3 makes provision for appropriations to such institutions as follows: "3. The appropriations made by the Legislature for all such institutions shall be made in consolidated form without reference to any particular institution and the Board of Regents herein created shall allocate to each institution according to its needs and functions." Moneys appropriated by the Legislature are subject to the provisions of Article X, Section 23 of the Oklahoma Constitution, commonly known as the budget balancing amendment, which limits legislative appropriations to the estimate made by the State Equalization Board of revenues to be available and which limits the incurring of debt as follows: "Revenues deposited in the State Treasury to the credit of the General Revenue Fund or of any special fund (which derives its revenue in whole or in part from state taxes or fees) shall, except as to principal and interest on the public debt, be allocated monthly to each department, institution, board, commission or special appropriation on a percentage basis, in that ratio that the total appropriation for such department, institution, board, commission or special appropriation from each fund for that fiscal year bears to the total of all appropriations from each fund for that fiscal year, and no warrant shall be issued in excess of said allocation. Any department, institution or agency of the State operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency, shall not incur obligations in excess of the unencumbered balance of surplus cash on hand. "The State shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in Sections Twenty-four (24) and Twenty-five (25) of Article Ten (X) of the Constitution of the State of Oklahoma." (Emphasis added.) The Legislature has enacted statutes to vitalize the budget balancing amendment. Title 62 O.S. 41.14 [62-41.14] (1971): "The Oklahoma State System for Higher Education, established by Article XIII-A of the Constitution of this State, shall operate an allotment system similar to the procedure set out in this Act for other agencies of the State except that the Oklahoma State Regents for Higher Education shall be substituted for the State Budget Director in connection with approving allotment requests of the constituent institutions comprising the Oklahoma State System of Higher Education . . . The Board of Regents shall allocate to each institution under its control from the consolidated, or lump sum appropriation made by the Legislature, an amount sufficient to meet the needs and functions of each institution for the entire year as is now provided by law, or may hereafter be provided by law. The amount allocated to each institution for each fiscal year in accordance with Article XIII-A, Oklahoma Constitution, shall be made in a lump sum without regard to uniform budget or accounting classifications, but shall not be available for expenditure until subsequently alloted by the Regents in accordance with the uniform budget and accounting classifications recommended by the National Committee on Standard Reports . . . All institutional income available for education and general purposes, as defined in the uniform budget and accounting classifications recommended by the National Committee on Standard Reports, and including income defined by as revolving fund income, shall operate as a continuing nonfiscal appropriation which may be spent for any educational and general purposes for which appropriated funds may be spent, if allocated and alloted as provided in this section; provided that the obligations as they are incurred may not exceed the unencumbered balance of cash on hand in accordance with Article X, Section 23, Constitution of the State of Oklahoma. At least thirty (30) days prior to the beginning of each fiscal year, each of the constituent institutions shall file with the Regents its request for appropriation allotments for each of the purposes for which expenditures are to be made. Such requests shall be broken down to conform to the uniform budget or accounting classifications recommended by the National Committee on Standard Reports. Each institution's request for appropriation allotments shall show the amount required to finance each item of the request for the entire year and for each quarter or each six-months period within the fiscal year, as required by the budget director. The Regents, or their designated official or employee who has been authorized to approve itemized allotment requests, shall consider the allotment requests for the purpose of making a determination of: (1) that the current financial requirements of the institution concerned justify the allotment to be made; (2) that the accounting classification is sufficient to reflect the purpose for which expenditures are to be made and that such classification is in accordance with the budget classifications adopted by the Budget Director and the Regents, which shall conform as nearly as possible to the account classification recommended by the National Committee on Standard Reports for Institutions of Higher Education; (3) that the realization of estimated revenues determined by the Budget Director is sufficient to allow the commitments to be made. . ." (Emphasis added.) Title 62 O.S. 41.16 [62-41.16] (1971) provides in part: "Whenever departments, institutions, boards, commissions or agencies of this State enter into contracts for, or on behalf of the State for the purchase of goods, wares, or merchandise, or for construction of buildings, roads, bridges, or any other thing for which labor and materials must be furnished by outside vendors, such agreement shall be evidenced by written contracts or purchase orders, and must be transmitted to the Budget Director immediately upon execution of such agreement. The Budget Director shall charge such contracts, purchase orders or agreements, against the proper appropriation allotment account as an outstanding order until it is liquidated by payment of a claim, or claims, against said contracts or purchase orders, or by cancellation. . .The State Budget Director shall never authorize payment of claims for the purchase of goods, wares and merchandise, or claims for contractual services, for any agency of the State unless it is supported by (1) contracts or purchase orders of the State Board of Public Affairs, or (2) institutional purchase orders or contracts, or (3) departmental purchase orders or contracts, or (4) authorizations for specific purchases. Any invoice or claim dated prior to the date of any of the above mentioned encumbrance documents shall be rejected by the State Budget Director. Any encumbrance document that is out standing on the records in the Budget Office for a period of one (1) year shall be cancelled, encumbrances for capital outlay excepted." (Emphasis added.) Title 62 O.S. 41.18 [62-41.18] (1971) provides in part: "The State Auditor shall be the disbursing agency of the State and shall draw either checks or warrants payable at the State Treasury, in payment of all claims, including payrolls, against the State which shall be by law directed to be paid out of the Treasury." In addition to appropriated moneys, each of the institutions of higher education receive moneys for educational and general purposes from student fees, sales and services of educational departments. Such moneys are deposited in the institution's revolving fund created by 70 O.S. 3901 [70-3901] (1971), which reads in part as follows: "There is hereby established a Revolving Fund for each State Educational Institution and for each agency thereof. Such Revolving Fund shall consist of any appropriations made by the Legislature for such purpose and shall include income received from student fees, sales and services of educational departments and all other income available to the institution or agency for Educational and General purposes as defined in the uniform budget and accounting classifications recommended by the National Committee on Standard Reports. A Revolving Fund may be used for any Education and General Purpose when allocated and allotted as provided by the Oklahoma Budget Law of 1947 . . ." (Emphasis added.) While moneys in the revolving fund are not subject to fiscal year limitations, express provision is made governing the obligation of such funds in 62 O.S. 41.14 [62-41.14] (1971), quoted above, and in 70 O.S. 3903 [70-3903] (1971) which reads in part: "All income available to an institution or agency for Educational and General purposes as defined in the uniform budget and accounting classifications recommended by the National Committee on Standard Reports, and including income defined by law as Revolving Fund income, shall operate as a continuing nonfiscal appropriation which may be expended for any Educational and General purpose for which appropriated funds may be expended, if allocated and allotted in accordance with the Oklahoma Budget Law of 1947, as provided in this section; provided that no obligation shall be incurred in excess of the unencumbered balance of cash on hand." (Emphasis added.) In addition to legislative appropriations and Revolving Fund income which fund educational and general functions, institutions of higher education receive moneys through their "auxiliary enterprises" such as intercollegiate athletics, food service, housing, etc. In this regard, it is necessary to consider 62 O.S. 7.1 [62-7.1] (1973), which reads in part as follows: "A. There is hereby created in the official depository in the State Treasury an agency clearing account for each state officer, department, board, commission, institution or agency of the state, hereinafter referred to collectively as state agencies. "B. It shall be the duty of each state agency, officer or employee, to deposit daily in the agency clearing account, or agency special account, established under Section 17 of this act, all monies of every kind, including, but not limited to: "1. Tax revenues; "2. Receipts from licenses, examinations, per diem and all other reimbursements, fees, permits, fines, forfeitures and penalties; and "3. Income from money and property, grants and contracts, refunds, receipts, reimbursements, judgments, sales of materials and services of employees, and nonrevenue receipts, received by a state agency, officer or employee by reason of the existence of and/or operation of a state agency. . . . "D. At least once each month each state agency shall transfer monies deposited in agency clearing-accounts to the various funds or accounts, subdivisions of the state, or functions as may be provided by statute and no money shall ever be disbursed from the agency clearing account for any other purpose, except in refund of erroneous or excessive collections and credits. . ." The fund to which such auxiliary enterprise moneys are ultimately deposited is the "Special Agency Account" provided by 62 O.S. 7.2 [62-7.2] (1973), which reads in part as follows: "A. The Director of State Finance, the State Treasurer and the Director of Fiscal Services of the State Legislative Council shall constitute a Special Agency Account Board with authority to approve the establishment of agency special accounts in the official depository of the State Treasury. In the case of institutions of higher education, the Special Agency Account Board acting in conjunction with the Oklahoma State Regents for Higher Education shall establish special agency accounts as appropriate which shall be consistent with provisions of the Oklahoma Budget Law of 1947 as it relates to institutions in The Oklahoma State System of Higher Education. . . . "C. The Board may approve agency special accounts for monies received by state agencies for the following purposes: . . . "2. Revenues produced by activities or facilities ancillary to the operation of a state agency, which receives no monies, directly or indirectly, from or through that state agency, including, but not limited to, revenues from the sales of food at retail level, sales at canteens, sales at student unions, sales at student bookstores, receipts from athletic programs and receipts from housing . . "3. Gifts, devises and bequests with an agency as beneficiary, unless otherwise provided by statute; . . . "5. Student loan funds and scholarship funds; . . . "8. Funds for which the state agency acts as custodian, including, but not limited to, fees from employee earnings approved by the governing board of the agency, funds of student organizations including student activity fees collected by an educational institution as a separate item in enrollment procedures, professional organizations, patients and inmates; and "9. Temporary accounts for funds arising from new or amended legislation not otherwise provided for in statute or for other emergency situations. Such accounts are to be utilized only pending legislative action directing custody of such funds. . . . "F. Monies deposited in agency special accounts shall be disbursed on vouchers issued by the state agency concerned to accomplish the purpose for which the monies were intended." (Emphasis added.)